WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Clyde Grindley,<br><br>            Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>           Respondents. | CIV 14-363-PHX-SPL (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE STEVEN P. LOGAN, UNITED STATES DISTRICT COURT:

      Petitioner Kenneth Clyde Grindley, who is confined in the Arizona State Prison Complex-Florence, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer on July 31, 2014 (Doc. 16), and Petitioner filed a Reply on September 3, 2014 (Doc. 19).

## BACKGROUND[1]

      On October 20, 1994, the Maricopa County Grand Jurors indicted Petitioner on two counts of aggravated assault for the shooting of a peace officer engaged in official duties, both dangerous offenses (cause number CR 94-09172). (Exh. A.) The indictment was amended by stipulation on September 8, 1995, to permit the alternative allegations of causing

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 16 – Respondents' Answer.

a "serious physical injury" or a "physical injury" to the victim law officer. (Exhs. B and C.) The facts of Petitioner's crime, as described by the Arizona Court of Appeals, are as follows:

> On the morning of October 10, 1994, Phoenix Police Officers Blackshear and Coffman observed two men enter a mini-storage facility rental office. The officers approached the office and Coffman asked defendant, whose back was to Coffman, to exit. Defendant turned his head and asked, "What's wrong?" Shots rang out from the other side of the office, and Blackshear was hit in the arm. Blackshear saw the second man, Faulkner, run towards him firing his gun at Blackshear. Blackshear was struck a second time in the chest. Although Blackshear was wearing a bullet-proof vest, the bullet entered Blackshear's chest. Faulkner fled.
>
> Meanwhile, Coffman turned to find cover. As he dove onto the ground towards his police car, Coffman saw defendant raise his gun to shoot, and the officer fired. Coffman's gunfire struck defendant three times. Defendant fled.
>
> Police officers pursued Defendant and Faulkner in a nearby trailer park. A member of the canine unit found defendant under a trailer and pulled him out. The police also apprehended Faulkner and confiscated weapons and cartridges.

(Exhibit M at 2-3.)

A jury convicted Petitioner of one count of aggravated assault with two prior convictions,[2] and on November 21, 1995, the trial court sentenced him to an aggravated term of 30 years in prison, based on the nature and circumstances of Petitioner's crime. (Exhs. D, E and F.) Petitioner received and signed a notice of rights of review at the time of his sentencing, and on November 27, 1995, he filed a timely notice of appeal. (Exhs. G and H.)

On January 12, 1996, Petitioner pled guilty in cause number in unrelated CR 95-000235,[3] to one count of armed robbery he committed on October 8, 1994. (Exh. I.) On the same day, the trial court sentenced Petitioner to 10.5 years of imprisonment "to be concurrent with the sentence imposed in cause number CR 94-09172." (Exh. J at 2-3.)

On November 26, 1996, Petitioner filed a notice of post-conviction relief in CR 94-009172. (Exh. K.) On December 6, 1996, the trial court granted Petitioner's request to

---

[2] The jury found Petitioner guilty of the aggravated assault on Officer Coffman, but not guilty of the aggravated assault on Officer Blackshear. (Exh. M at 3.)

[3] The instant habeas petition only challenges cause number CR 94-009172 – the officer shooting case.

- 2 -

1 proceed *pro se*. (Exh. L.) However, on December 19, 1996, the court of appeals reversed Petitioner's conviction and sentence on the basis of an improper preclusion of eyewitness testimony proffered by Petitioner, and remanded the matter for a new trial. (Exh. M at 3-5.) Per Petitioner's request, the trial court dismissed Petitioner's Rule 32 post-conviction proceedings on January 16, 1997. (Exhs. N and O.) The court of appeals issued its mandate on January 29, 1997. (Exh. P.)

On October 16, 1997, a jury again convicted Petitioner of aggravated assault, a dangerous offense. (Exhs. Q and R.) On November 17, 1997, after considering an updated presentence report (Exh. S), the trial court sentenced Petitioner to an aggravated term of 28 years of imprisonment, to be served consecutively "to any sentence Defendant is currently serving." (Exh. T at 2.) On that same date, Petitioner received and signed a notice of rights of review after conviction. (Exh. T at 4; Exh. U.) On December 2, 1997, Petitioner filed a timely notice of appeal. (Exh. V.)

In the course of affirming Petitioner's conviction and sentence, the court of appeals again described the facts of the crime, in view of the evidence presented at the second trial, as follows:

> Phoenix Police Officers Thomas Blackshear and Gary Coffman were on patrol in west Phoenix on the morning of October 10, 1994, when they observed a late model Dodge parked in front of a mini-storage facility. Officer Blackshear saw two people sitting inside the car. He attempted to "run the plate" on the vehicle, but was able to see only a portion of the license plate before Officer Coffman drove around the block and again went by the mini-storage facility. By the time the officers returned, however, the Dodge had been moved and was facing the opposite direction. Although Blackshear was not unable to see the license plate he did observe the two occupants exit the vehicle and walk quickly toward the facility's rental office. The vehicle's occupants were later identified as defendant and his co-defendant, Jeffrey Faulkner.
>
> The officers made a U-turn and parked in front of the storage facility. They then exited their vehicle and approached the rental office. Officer Coffman could see defendant standing in the open doorway to the office, and he asked him to step outside so that he could speak with him. Looking back over his shoulder, defendant responded, "What did we do, officer?" Coffman repeated his request that defendant step outside. At that moment, Faulkner fired his gun from inside the rental office, striking Officer Blackshear in the arm. Faulkner emerged from the office and again shot Blackshear, this time in the chest. Meanwhile, as Officer Coffman attempted to find cover, defendant fired several shots at him. Coffman returned fire, striking defendant three times. Police later found both defendant and Faulkner hiding in a nearby trailer park.

1  (Exh. W at 2-3, 12.) Petitioner raised three issues on direct appeal: 1) trial court's denial of
2  a continuance was an abuse of discretion; 2) erroneous self-defense jury instruction; and 3)
3  erroneous jury instruction regarding inference of consciousness of guilt from a defendant's
4  threat to a witness – all of which the court of appeals rejected in its Memorandum Decision
5  filed December 24, 1998. (Id. at 3-12.) Although the court of appeals issued its Order and
6  Mandate on January 29, 1999, indicating that no motion for reconsideration or petition for
7  review to the Arizona Supreme Court was filed (Exh. Y), the record reflects that on
8  September 3, 1999, the Arizona Supreme Court summarily denied Petitioner's petition for
9  review (Exh. X).

10  Also, although the exact date that Petitioner filed his notice of petition for
11  post-conviction relief is not apparent by the record, it is evident that said notice was timely
12  because on January 25, 2000, the trial court assigned counsel and extended the time within
13  which to file a PCR petition. (Exh. Z.) On March 17, 2000, Petitioner filed a PCR petition
14  alleging one count of IAC from "lack of adequate preparation" resulting from the trial court's
15  denial of his counsel's motion for a continuance – a denial which the court of appeals found
16  was not an abuse of the trial court's discretion. (Exh. AA.) The court of appeals had
17  previously concluded, in pertinent part:

> We are not persuaded that the trial court abused its discretion in denying the motion to continue in this case. Defendant's retrial had been pending for nine months, and Mr. Williams had been assigned to the case throughout that period. Moreover, Mr. Williams had previously tried the case and was thus familiar with the witnesses and issues involved. He originally sought the continuance only because he believed that he would be in trial on another matter when defendant's trial commenced. That other matter, however, had concluded by the time he argued the motion to continue. At the oral argument, he maintained instead that he was simply unprepared to proceed. However, he did not specify for the court what additional preparation was needed to ready him for trial. Given this record, the trial court was within its discretion in denying the motion to continue.

(Exh. W at 5-6.) On October 24, 2000, the trial court summarily dismissed Petitioner's PCR petition, concluding:

> The Court finds that defendant has failed to establish that there is a reasonable probability that but for counsel's unreasonable conduct the result of the trial would have been different, as required by State v. Salazar, 146 Ariz. 540, 707 P.2d 944 (1985).

- 4 -

> Defendant has raised speculation only and this is not enough to have any further hearings on this petition.

(Exh. BB.) On November 21, 2000, Petitioner filed a timely petition for review in the Arizona Court of Appeals, which was denied on July 17, 2001. (Exhs. CC and II.)

Eleven years later, on December 12, 2011, Petitioner filed a second, untimely notice of post-conviction relief, referencing both the cause number in the instant habeas petition – CR 1994-009172 – as well as the other cause number – CR 1995-000235 (in which he pled guilty, and does not contest in his habeas petition). (Exh. DD.) Regarding the instant cause number, Petitioner raised a claim of IAC of PCR counsel, while two other claims related to CR 1995-000235. On January 3, 2012, the trial court dismissed Petitioner's PCR proceeding, finding in relevant part:

> The defendant claims that post-conviction relief counsel was ineffective in presenting a claim of ineffective assistance of counsel. *See* Ariz. R. Crim. P. 32.1(a). This claim only references criminal matter CR 1994-009172-B. The defendant's first Rule 32 proceeding followed a direct appeal. A defendant's right to effective assistance of counsel extends to the first appeal of right only and no further. *See* State v. Pruett, 912 P.2d 1357, 1359 (Ariz. App. 1995). Additionally, the defendant cannot raise a claim of this nature in an untimely or, in this case, a successive notice of post-conviction relief. *See* Ariz. R. Crim. P. 32.4(a).
>
> The defendant's second claim for relief is in regards to criminal matter CR 1995-000235-A. The defendant claims that he has been sentenced in violation of the plea agreement accepted by the Court. The defendant's plea agreement, filed on January 12, 1996, states that the defendant will plead guilty to one count of Armed Robbery and that the Court will sentence the defendant to a term of imprisonment of 10.5 years. The defendant's sentence was to run concurrent to any sentence imposed in criminal matter CR 1994-009172-B. The Court honored the defendant's plea agreement and the defendant was sentenced in accordance with the plea agreement. The issue has arisen because the defendant's original sentence in criminal matter CR 1994-009172-B was vacated after the defendant was sentenced in criminal matter CR 1995-000235-A. When the Court resentenced the defendant in criminal matter CR 1994-009172-B, the Court directed that the sentence would run consecutively to any sentences the defendant was currently serving time for. While an argument can be made that the imposition of a consecutive sentence in criminal matter CR 1994-009172-B violated the spirit of the plea agreement, the defendant cannot obtain relief. A claim that the state or the Court violated a plea agreement is properly lodged pursuant to Ariz. R. Crim. P. 32.1(a). However, as stated above, the defendant cannot raise a claim of this nature in an untimely or successive notice of post-conviction relief. *See* Ariz. R. Crim. P. 32.4(a).
>
> The defendant's final claim is that his untimely filing of his notice of post-conviction relief was through no fault of his own. *See* Ariz. R. Crim. P.

> 32.1(f). This claim relates only to criminal matter CR 1995-000235-A. However, after reviewing the defendant's notice of post-conviction relief, it is apparent to the Court that the defendant did not pursue his post-conviction relief rights in regards to CR 1995-000235-A. The defendant was sentenced on January 12, 1996. The defendant filed a notice of post-conviction relief in criminal matter CR 1994-009172-B after being sentenced in CR 1995-000235-A. However, at that time, the defendant did not also submit a notice of post-conviction relief in criminal matter CR 1995-000235-A. Also, the defendant essentially "gave up" after his notice of post-conviction relief was dismissed in 2000. Eleven years later, the defendant wants to re-litigate his conviction and sentence. The defendant has provided insufficient justification to allow an untimely notice of post-conviction relief to proceed as timely at this point.
>
> The defendant has not raised any claims that can be considered by the Court in an untimely or successive notice of post-conviction relief.

(Exh. EE at 2-3.)  Petitioner did not file a petition for review.

However, he did file a third successive, untimely notice of post-conviction relief in the instant cause number on July 12, 2012, alleging a claim of IAC based on Martinez v. Ryan, 132 S.Ct. 1309 (2012), and a claim that his sentence is "illegal." (Exh. FF.)  On August 20, 2012,[4] after noting that this case has been final since January 29, 1999, and this was Petitioner's third, untimely request for post-conviction relief, the trial court dismissed the PCR proceeding as follows:

> The defendant is claiming, pursuant to Ariz. R. Crim. P. 32.1(g), that there has been a significant change in the law that if applied retroactively to the defendant's case, it would probably affect the outcome of the defendant's convictions or sentences. Specifically, the defendant refers to the recently decided United States Supreme Court decision of *Martinez v. Ryan*, 132 S.Ct. 1309 (U.S. 2012). In *Martinez*, the United States Supreme Court held where, under state law, ineffective assistance of trial counsel claims must be raised during the first Rule 32 proceeding, a procedural default will not prohibit a federal habeas court from hearing those claims if, in the first Rule 32 proceeding, there was no counsel or counsel in that proceeding was ineffective. The *Martinez* holding does not apply to the defendant nor does it provide relief at the state court level. *Martinez* may permit the defendant to seek relief in federal court. Therefore, defendant is not entitled to relief under Rule 32.1(g).

(Exh. GG at 2.)

---

[4] The court's 8/20/12 minute entry listed only the CR 1995-00235 cause number, however, by corrective minute entry on 8/27/12, the instant cause number – CR 1994-009172 – was added. (Exh. HH.)

- 6 -

Petitioner filed a petition for review (listing both cause numbers) in the Arizona Court of Appeals, arguing that the consecutive sentence imposed in CR 1994-009172 violated his plea agreement in CR 1995-000235. (Doc. 1 at 63-75.) On October 17, 2013, the court of appeals – addressing only CR 1995-000235 – granted review, but denied relief because the "concurrent vs. consecutive sentences" issue was previously decided in the second PCR proceeding in 2011, and, further, Martinez offered no avenue for relief. (Doc. 1 at 78-79.)

Petitioner filed the instant habeas petition – addressing only CR 1994-009172 – on February 24, 2014. He raises two grounds for relief: 1) IAC of PCR counsel for failure to raise a challenge to the consecutive nature of the sentence imposed after retrial; and 2) breach of his plea agreement in CR 1995-000235 by imposition of the consecutive sentence in CR 1994-009172. Respondents filed an Answer on July 31, 2014, and Petitioner filed a Reply on September 3, 2014.

## DISCUSSION

In their Answer, Respondents contend that Petitioner's habeas petition is untimely and must be dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Id. at 414.

A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed even though the petition is not filed until later. See Isley v. Arizona Department of Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief is also pending during the intervals between a lower court decision and a review by a higher court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold, 536 U.S. 214, 223 (2002)). However, the time between a first and second application for post-conviction relief is not tolled because no application is "pending" during that period. See Biggs, 339 F.3d at 1048; see also King v. Roe, 340 F.3d 821 (9th Cir. 2003) (The petitioner was "not entitled to tolling during the interval between the completion of one round of state collateral review and the commencement of a second round of review."). Moreover, filing a new petition for post-conviction relief does not reinitiate a limitations period that ended before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).

The statute of limitations under AEDPA is subject to equitable tolling in appropriate cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for equitable tolling

- 8 -

to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" and prevented him from filing a timely petition. Id. at 648-49 (quoting Pace, 544 U.S. at 418).

The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely. The Arizona Supreme Court denied Petitioner's petition for review of his direct appeal on September 3, 1999. (Exh. X.) Petitioner convictions became final 90 days later – on December 2, 1999 – when the time expired for filing a petition for writ of certiorari in the United States Supreme Court. See 28 U.S.C. § 2244(d)(1)(A) (providing AEDPA statute of limitations begins "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"); Porter v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010) ("When, on direct appeal, review is sought in the state's highest court but no petition for *certiorari* to the United States Supreme Court is filed, direct review is considered to be final when the *certiorari* petition would have been due, which is 90 days after the decision of the state's highest court.").

Petitioner, however, apparently filed his notice of post-conviction relief before his convictions became final. (Exh. Z, AA.) Because the notice was properly filed, it started tolling AEDPA's 1-year statute of limitation before it started to run. The first PCR proceeding was "pending" and tolled AEDPA's statute of limitations until July 17, 2001 – when the court of appeals denied Petitioner's petition for review of the trial court's October 24, 2000 dismissal of Petitioner's PCR petition. (Exhs. BB, CC and II.) Petitioner did not take any further action in this PCR proceeding. Because nothing was pending after the appellate court's decision, the statute of limitations began running the next day. See Hemmerle v. Schriro, 495 F.3d 1069, 1074 (9th Cir. 2007). The limitations period continued running uninterrupted for one year – until July 18, 2002 – when it expired.

Petitioner's subsequent PCR proceedings were filed over nine years after the limitations period had expired (Exhs. DD, EE, FF, GG), and, thus, did not toll the limitations period. See Ferguson, 321 F.3d at 823 ("[S]ection 2244(d) does not permit the re-initiation

1  of the [federal 1-year] limitations period that has ended before the state petition was filed.");
2  see also Pace, 544 U.S. at 414-17; Bonner v. Carey, 425 F.3d 1145, 1149 (9th Cir. 2005).

3  In sum, Petitioner filed the instant habeas petition well over 11 years after the 1-year
4  limitations period expired. The Petition is therefore untimely.

5  The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably
6  tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United
7  States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other
8  grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998).
9  Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control
10 make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063,
11 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under
12 AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When
13 external forces, rather than a petitioner's lack of diligence, account for the failure to file a
14 timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v.
15 Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must
16 establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some
17 extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also
18 establish a "causal connection" between the extraordinary circumstance and his failure to file
19 a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir.
20 2007).

21 Petitioner has not proffered any extraordinary circumstance that would justify
22 equitable tolling or demonstrated that an external impediment hindered the diligent pursuit
23 of his rights. Indeed, in his Reply, Petitioner appears to reargue the merits of his claims.
24 And, Petitioner's *pro se* status, indigence, limited legal resources, ignorance of the law, or
25 lack of representation during the applicable filing period do not constitute extraordinary
26 circumstances justifying equitable tolling. See, e.g., Rasberry v. Garcia, 448 F.3d 1150, 1154
27 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an
28 extraordinary circumstance warranting equitable tolling.").

To the extent that Petitioner may suggest that Martinez v. Ryan, ___ U.S.___, 132 S. Ct. 1309 (2012), applies in this context, he is mistaken. Martinez applies only to excusing procedural default and/or lack of exhaustion in state court. See id. at 1315. In Martinez, the Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 1320. Thus, Martinez has no application to the statute of limitations in the AEDPA which governs Petitioner's filing in federal court. See McKinnie v. Long, 2013 WL 1890618 (C.D. Cal. Apr. 5, 2013) ("*Martinez* dealt solely with the state procedural default doctrine, which is entirely different from the issue presented here of whether petitioner's claims are time barred under the AEDPA statute of limitations."); Moore v. Williams, 2013 WL 271454 at *5 (D. Nev. Jan. 23, 2013) ("Petitioner has conflated the federal timeliness question with the issue of whether a claim in the federal petition is barred due to procedural default in state court."). Accordingly, Martinez does not present a basis for equitable tolling. Petitioner's habeas petition is untimely.

## CONCLUSION

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 14th day of October, 2014.

*[signature: Michelle H. Burns]*
Michelle H. Burns
United States Magistrate Judge